UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 2007-91 (WOB)

STAMATIOS J. SARAGAS                                            PLAINTIFF

VS.                              **OPINION and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                 DEFENDANT

 

      This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 11) and the cross-motion for summary judgment of the defendant (Doc. 12).

      In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

      In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. pt. 404, subpt. P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was twenty-four years old and has an eleventh grade education. The claimant has no prior relevant work experience.

The claimant alleges disability due to organic mental disorders and depression. Since

2

January 2000, the claimant has had ongoing outpatient mental health treatment at Baptist Regional Medical Center with a consistent diagnoses for major depression. He has bi-weekly therapy sessions to deal with his depression, anger management and mental issues. He sees a therapist, Ms. Passow, for therapy sessions and a psychiatrist, Dr. Shahmalak, manages his drug therapy. The claimant currently takes Wellbutrin, Seroquel, and Abilify for symptoms associated with his depression.

On January 26, 2005, the claimant was hospitalized, reporting an inability to cope, feeling hopeless and very depressed. He had gotten angry with his aunt and got a shotgun out. He decided to seek medical help and came to the hospital. At the hospital, the claimant was placed on suicidal precautions and diagnosed with paranoid disorder, family problems, alcohol abuse or dependence and substance abuse in remission. The claimant was treated with daily psychiatric evaluations and counseling to address two main problems: his potential for violence, and his ineffective coping skills. The claimant was found to have a GAF score of 45, with a GAF of 50-55 within the past year. Claimant was released after five days in an improved and stable condition and directed to follow-up with his treating psychiatrist, Dr. Shahmalak.

The medical records from Dr. Shahmalak and therapist Passow demonstrate the claimant struggles with the inability to concentrate, irritability, anger management, lack of insight, and depression. He lives with his mother, who is disabled as a result of schizophrenia, but his aunt lives next door and acts as his guardian. He is often combative and irritable.

At the hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five-step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant's depression is a severe impairment.

At step 3, the ALJ determined that, although claimant has an impairment that is "severe," he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. pt. 404, subpt. P, appendix 1. The ALJ specifically determined that claimant's impairment or combination of impairments did not meet the "B" criteria of the listings under Section 12.00 and that there was no evidence of "C" criteria.

At step 4, the ALJ found that the claimant did not have any prior relevant work experience and, therefore, moved to step five. At step 5, the ALJ found that the claimant has a residual functional capacity to perform a range of heavy work but that his ability to perform is compromised by nonexertional limitations caused by his mental disorder. The ALJ asked the vocational expert whether there were any jobs in the economy that a person could perform who was claimant's age and had the same education, work history and RFC as the claimant. The vocational expert opined that, given the limitations posed by the ALJ, a significant number of jobs existed in the national economy that such a claimant could perform, including production laborer (960 jobs in Kentucky and 56,000 jobs nationally) and packer (480 jobs in Kentucky and 36,800 jobs nationally). Based on this testimony, the ALJ found that the claimant was not disabled.

The claimant asserts that the ALJ erred in his decision to give little or no weight to the opinions of his treating psychiatrist or the examining consultants. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

Here, plaintiff specifically argues that the ALJ ignored the opinions of both his treating physician, Dr. Shahmalak, and the examining consultant, Dr. Belew. The ALJ explained his reasoning for giving these medical opinions little weight:

> It should be noted that on May 12, 2004, treating psychiatrist, S. Shahmalak, M.D., provided the claimant with a "To Whom It May Concern" letter pronouncing the claimant disabled based on a diagnosis of major depression. He stated, "It is unlikely that he will be able to maintain [any] type of employment" (Exhibit B3F/33). Also, at the hearing, the claimant's attorney presented an assessment of function from Dr. Shahmalak dated November 24, 2003, in which he assessed the claimant with "poor" to "no" ability in a majority of mental domains as they relate to making occupational, performance, and personal/social adjustments (Exhibit B12F). He cited "many missed appointments" and "little to no self awareness." There are no contemporaneous treatment notes to correspond and more recent notes from Dr. Shahmalak and the claimant's therapist, Elaine Passow, show regular therapy attendance and improving insight, along with serial denials of suicidal and homicidal ideation and hallucinations. Dr. Shahmalak subsequently assigned a GAF of 55, in May 2004, which is totally inconsistent with his outdated assessment of November 2003. Thus, little weight is afforded the assessment presented at the hearing by Mr. Saragas' representative.
>
> The record also contains a psychological evaluation by non-treating source, Barbara Belew, Ph.D. Dr. Belew saw the claimant at the request of Mr. Saragas' counsel on April 4, 2006. Dr. Belew reported that the claimant was adequately groomed. He was generally oriented but short term memory was somewhat impaired. Mr. Saragas' speech was slow and he was somewhat lethargic. He was cooperative with the evaluation but cried at times during the interview. Dr. Belew stated that the claimant had difficulty with a task relying on attention and concentration and that per the WAIS protocol IQ was estimated to fall within the borderline to low average range. The claimant reported ongoing difficulty with anger management and symptoms associated with a mood disorder. This was echoed by his maternal aunt who noted that the claimant had problems dealing with women. Dr. Belew stated that given the combination of features exhibited by the claimant and his history of psychiatric treatment for "what appear to be increasingly severe symptoms, it is this evaluators opinion that there is evidence adequate to determine that he is disabled." Dr. Belew assessed the claimant with "marked"

>severity in activities of daily living; social functioning; and concentration, persistence, and pace. She found moderate to marked limitations in adaptive functioning. Diagnoses included schizoaffective disorder; rule out schizophrenia, paranoid type; and major depressive disorder, recurrent, moderate to severe. Dr. Belew assessed the claimant with a GAF of 30, which denotes "behavior is considerably influenced by delusions or hallucinations . . . or serious impairment in communication or judgment . . . or inability to function in almost all areas." She completed an assessment form in which she rated the claimant with "poor" to "no" ability in all areas of function aside from maintaining personal appearance (Exhibit B13F).
>
>In relation to the above, the undersigned gives little weight to the opinion of non-treating examiner, Dr. Belew inasmuch as the subjective report provided by the claimant and his aunt regarding the severity of symptoms and escalation of same particularly in relation to his aggression toward women, is not supported by the record of treatment. Dr. Belew's diagnosis is not corroborated. The claimant has never been diagnosed with or treated for schizophrenia and there have been few references to psychotic symptoms. Mr. Saragas has often denied hallucinations, contrary to his hearing testimony and other than voluntary restrictions in daily activities and socialization; the record certainly does not support a finding of marked restriction in any area of functioning under the "B" critieria..

(AR 16-17).

The court notes, however, that on a February 2005 report for the Division for Disability Determinations, consulting examiner Phil Pack, a licensed psychological practitioner, also noted possible schizophrenic symptoms. Mr. Pack further noted possible thought disorder and impairment in thinking and cognitive skills secondary to psychiatric issues. Based upon his observation of the claimant, objective testing and history, Mr. Pack found the claimant to have a poor ability to sustain attention to perform repetitive tasks. He also found the claimant had a fair to poor ability to understand, retain, and follow instructions; relate to others, including fellow workers and supervisors; and adapt to the stress and pressures of day-to-day work activity. This examiner further concluded that the claimant would need assistance in managing any benefits awarded.

The court finds troubling the ALJ's failure to even mention this consulting report. Social

Security Rulings provide that the ALJ cannot ignore an opinion of a medical consultant, but must explain the weight given to the opinion. SSR 96-6.

In addition, the ALJ did not mention the reports of the consultants providing only a record review. Although the record reviewers found the claimant had fewer impairments than found by the examining sources, they did note the claimant had moderate limitations in the areas of concentration, ability to get along with co-workers, ability to work in coordination with others without distraction, ability to respond appropriately to changes in the work setting and setting realistic goals or make plans independent of others. The ALJ, however, did not explain the weight afforded these reports and, in fact, did not even mention them. It is not clear whether the ALJ rejected these findings or found them not so limiting. Either way, the ALJ must articulate the reasons for his findings so that this court can conduct a meaningful review.

The court finds that the ALJ's assessment that "the totality of the evidence is consistent with the residual functional capacity that I have determined" and "after careful consideration of the entire record" there is no evidence of total disability is insufficient. The ALJ failed to provide the basis for his findings. SSR 96-6. Accordingly, the court finds that the ALJ's decision failed to provide the minimal articulation needed to support his conclusion and, therefore, a remand is necessary.

Upon remand, the ALJ should note that the court is also concerned with the vocational expert's testimony, in response to the attorney's question, that a person would be unable to maintain any competitive employment if they were restricted but not precluded in the areas of relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, maintaining attention, concentration, and

behaving in an emotionally-stable manner. (AR 369). These restrictions are found in most, if not all, of the medical sources' assessments.

For the foregoing reasons, the court finds that the ALJ's decision is not based on substantial evidence. Once a court determines that substantial evidence does not support the Commissioner's decision, it can reverse the decision and award benefits only if all essential factual issues have been resolved and the record establishes a claimant is entitled to benefits. <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir. 1994). Where, as here, the factual issues have not been resolved, the court shall remand the case for further consideration. <u>Id.</u>

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That, pursuant to sentence four of 42 U.S.C. § 405(g), the motion for summary judgment of the plaintiff (Doc. 11) be, and it hereby is, **granted**.; and the cross-motion for summary judgment of the defendant (Doc. 12) be, and it hereby is, **denied**; and

2. That this action be, and it is, hereby **remanded to the Commissioner** for further proceedings consistent with this Opinion.

This 7th day of February, 2008.



Signed By:
<u>William O. Bertelsman</u>  WOB
United States District Judge